IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KERRY M. SKELTON,

     Plaintiff,        No. 06:13-cv-01117-HZ

   v.

COMMISSIONER OF SOCIAL      OPINION & ORDER
SECURITY,

     Defendant.

Alan Stuart Graf, P.C.
ALAN GRAF, ATTORNEY AT LAW
207 Pine Street
Floyd, Virginia 24091

   Attorney for Plaintiff

S. Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon
Ronald K. Silver
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201-2902

1 - OPINION & ORDER

John C. Lamont
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff Kerry Skelton brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income (SSI).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)).  I affirm the Commissioner's decision in part and reverse it in part.

## PROCEDURAL BACKGROUND

      Plaintiff applied for SSI on December 22, 2008, alleging an onset date of December 1, 2008.  Tr. 149-52.  Her application was denied initially and on reconsideration.  Tr. 93-99, 103-06.

      On February 16, 2011, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ).  Tr. 44-47.  The hearing was continued until June 15, 2011 for receipt of additional medical records.  Id.; Tr. 49-89.  On October 14, 2011, the ALJ found Plaintiff not disabled.  Tr. 10-28. The Appeals Council denied review.  Tr. 1-6.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on having fibromyalgia, depression, post-traumatic stress disorder (PTSD), and chronic pain.  Tr. 157.  She contends that she has difficulty sitting or standing for very long because it hurts her back, neck, and hips.  Id.  Additionally, she does not

2 - OPINION & ORDER

"deal well with crowds of people" because she has panic attacks.  Id.  Her depression is

sometimes so severe that she cannot get out of bed.  Id.

At the time of the hearing, she was forty years old.  Tr. 56.  She has a GED and no past

relevant work experience.  Tr. 22, 56.  Because the parties are familiar with the medical and other

evidence of record, I refer to any additional relevant facts necessary to my decision in the

discussion section below.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§

423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure.  See Valentine v.

Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step

procedure to determine disability).   The claimant bears the ultimate burden of proving disability.

Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the

claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in

3 - OPINION & ORDER

combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four.  Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her December 22, 2008 application date.  Tr. 15.  Next, at step two, the ALJ determined that Plaintiff has severe impairments of major depressive disorder, PTSD, status post cervical spine fusion at C6-C7, status post right rotator cuff repair, right brachial plexitis, fibromyalgia, a history of methamphetamine abuse, and remote foot/ankle fracture.  Id.  At step three, the ALJ found that Plaintiff's impairments did not meet or equal, either singly or in combination, a listed impairment.  Id.

At step four, the ALJ concluded that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 416.967(b), crawl and climb ladders, ropes, and ladders no more than

occasionally, perform other postural activities frequently, but that she can reach overhead with her right upper extremity only occasionally.  Tr. 17.  She is limited to performing tasks requiring no more than four steps and can have no more than occasional interaction with the public.  Id. With no past relevant work to assess at step four, the ALJ determined at step five that with this RFC, Plaintiff is able to perform jobs that exist in significant numbers in the economy such as bottle packer, marker II, and garment sorter.  Tr. 23.  Thus, the ALJ determined that Plaintiff is not disabled.  Id.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks omitted).  The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision.  Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."  Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff contends that the ALJ erred by finding her not credible, by improperly rejecting

treating physicians' opinions, and by relying on vocational expert testimony which conflicts with the Dictionary of Occupational Titles (DOT). I address the arguments in turn.

I. Credibility Determination

The ALJ found Plaintiff's subjective testimony regarding the intensity, persistence, and limiting effects of her alleged symptoms to be less than credible. Tr. 21. The ALJ gave the following reasons in support of this finding: (1) Plaintiff has no ties to the workforce, having never engaged in substantial gainful activity, giving her little incentive to return to the workforce; (2) she stopped working for reasons unrelated to her impairments and never attempted to return to work afterwards; (3) she reported anxiety and other PTSD symptoms related to domestic abuse she suffered at the hands of her husband, but nonetheless drove him to and from work daily during the adjudicatory period even though they were separated; (4) she claimed she did not like to socialize but she remarked to providers that she had a lot of friends; (5) she participated in activities inconsistent with her claimed limitations including acting as the sole care provider to her two children, performing household chores such as cooking and shopping, and going camping and sleeping on the ground for three days; and (6) objective findings did not support the claimed limitations in her upper extremity and grip. Tr. 21.

Plaintiff challenges several of the reasons provided by the ALJ. Plaintiff contends that having no ties to the workforce is not a sufficient reason to discredit her testimony because it would "effectively discredit all applicants for the indigent program of [SSI]." Pl.'s Op. Brief at 10. She argues that the fact she drove her husband to work despite a history of abuse cannot be used against her because "[a]nyone familiar with domestic abuse situations understands that there is no black and white in these situations and that victims sometimes take years to free themselves

6 - OPINION & ORDER

from their abusers." Id.  She also faults the ALJ for failing to cite to the record for his statement

that she claimed she had many friends yet also claimed to avoid socializing.  Finally, she argues

that the objective evidence does support her testimony.

The ALJ is responsible for determining credibility.  Vasquez, 572 F.3d at 591.  Once a

claimant shows an underlying impairment and a causal relationship between the impairment and

some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony

if there is no evidence of malingering.  Carmickle v. Comm'r, 533 F.3d 1155, 1160 (9th Cir.

2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes

objective medical evidence establishing that the claimant suffers from an impairment that could

reasonably produce the symptoms of which he complains, an adverse credibility finding must be

based on 'clear and convincing reasons'").

When determining the credibility of a plaintiff's complaints of pain or other limitations,

the ALJ may properly consider several factors, including the plaintiff's daily activities,

inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and

relevant character evidence.  Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).  The ALJ may

also consider the ability to perform household chores, the lack of any side effects from prescribed

medications, and the unexplained absence of treatment for excessive pain.  Id.; see also

Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many

factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility

evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning

the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained

or inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

7 - OPINION & ORDER

and (3) the claimant's daily activities.") (internal quotation marks omitted).

Assuming for the purposes of this Opinion that Plaintiff's arguments are well-taken, Plaintiff does not contend that the ALJ erred in concluding that Plaintiff's activities of daily living are inconsistent with her claimed subjective limitations. The record supports the ALJ's finding which is, by itself, a sufficient reason to reject her subjective testimony and find her not credible. As a result, the ALJ did not err.

## II. Treating Practitioners' Opinions

Plaintiff argues that the ALJ improperly rejected the opinions of Dr. Jason Phillips, M.D. and Dr. Gale Smolen, M.D., as well as the Global Assessment of Functioning (GAF) scores rendered by two other mental health therapists.

### A. Dr. Phillips

Dr. Phillips has been Plaintiff's primary care provider since February 2005. Tr. 579. In February 2011, Dr. Phillips drafted a letter offering his opinion on Plaintiff's functional capacity limitations. Tr. 579-80. He noted that she "had a multitude of medical and psychiatric diagnoses, including chronic pain from a variety of objective diseases and injuries, and the mental health problem of bipolar disorder." Tr. 579. He saw Plaintiff every few months. Id. He described her symptoms as follows:

> She has chronic right ankle and leg pain after an on job injury broke her lower leg, leading to an open surgery and metal hardware insertion in 1998. In January '07 she fractured her right foot. In December '06 she had an MRI demonstrating a herniated cervical disk, and this was treated surgically with a fusion at the C6-7 level. She has had chronic neck pain after this surgery and this is only partly relieved with muscle relaxers. In 2007 she had a rotator cuff tear, speckifically [sic] a SLAP tear and Bankart injury and surgical repair in 2009, but in recent months she has had recurrent symptoms in her right shoulder, and she is going to physical therapy again for this condition and recently received another

steroid injection.  She has had numbness and weakness in her right arm that has
been secondary to a brachial plexopathy diagnosed by EMG/NCV studies.  She
has very poor coordination in her hands and is suspected by her neurologist to
have carpal tunnel syndrome bilaterally.

Id.

Dr. Phillips then noted that Plaintiff "reports symptoms of widespread muscle and joint

pains and limitations on a chronic basis, mainly limited to the right shoulder, right arm pain and

weakness, bilateral hand numbness and poor coordination, neck pain, and low back pain."  Id.

He explained that the pain and limitations were typical of what he has seen in many other

patients with her diagnoses.  Id.  He noted that she has trouble doing light lifting and placing

objects, even those less than five pounds, on shelves and counters.  Id.  Standing or walking for a

significant portion of the day would also be difficult for her.  Id.  Her bipolar disease leads to

hopelessness and affects motivation.  Id.  He opined she would have difficulty staying on task

and accepting criticism of coworkers on a job.  Id.  He stated that her psychiatrist could attest to

her psychiatric problems in detail.  Id.  In the end, he opined that "given her symptoms, which

she earnestly reports to me and are plausible based on her diagnoses, [] she would likely not be

capable of light work or even sedentary work on a full time basis."  Id.

The ALJ gave Dr. Phillips's opinion "little weight" because Dr. Phillips himself indicated

it was based on Plaintiff's own "reports of symptoms," it was inconsistent with the substantial

evidence of record, and Dr. Phillips rarely made firsthand objective findings.  Tr. 21.  The ALJ

further found that after Dr. Phillips gave this opinion, subsequent EMG and nerve conduction

studies revealed there was no underlying cause for Plaintiff's subjective reports.  Id.  The ALJ

also explained that Dr. Phillips failed to provide a rationale for his conclusion that Plaintiff could

not sustain full-time work. Id. The ALJ wrote that while Dr. Phillips "noted problems related to the right upper extremity, these would not reasonably preclude all work. Similarly, he failed to define the claimant's limited ability to stand or sit for prolonged periods, such that it is unclear that this would be debilitating." Tr. 22. The ALJ gave more weight to the assessments of the state agency consultants and gave significant weight to the comments of Dr. Frances Spiller, M.D. Id.

Plaintiff argues that the ALJ erred in rejecting Dr. Phillip's opinion because the opinion was not based solely on Plaintiff's subjective complaints, the ALJ's reference to certain evidence was inaccurate, the ALJ failed to identify the inconsistent evidence, and a subsequent functional capacities assessment by Dr. Phillips in February 2012 gave specific limitations for Plaintiff's abilities to sit and stand. Defendant argues that the ALJ appropriately afforded less weight to Dr. Phillips's opinion because it was poorly supported and inconsistent with the record.

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. Id.; 20 C.F.R. §§ 1527(c)(1)-(2), 416.927(c)(1)-(2).

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Holohan, 246 F.3d at 1202. If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial

evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. §§ 1527(d)(2), 416.927(d)(2).  Orn, 495 F.3d at 631.

If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons.  Id. at 632.  Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record.  Id.

Dr. Phillips noted several things in Plaintiff's medical history:  (1) a 1998 foot/ankle surgery which he contended caused chronic right ankle and leg pain; (2) a January 2007 right foot fracture; (3) a 2006 cervical C6-7 fusion with post-operative chronic neck pain[1]; (4) a 2007 rotator cuff tear which was surgically repaired in 2009 but which was producing recurrent right shoulder symptoms "in recent months"; and (5) numbness and weakness in Plaintiff's right arm secondary to a brachial plexopathy diagnosed by EMG/NCV studies.  Tr. 579.  He also noted poor coordination in her hands and that her neurologist suspected that she had bilateral carpal tunnel syndrome.  Id.  In addition, he specifically noted that Plaintiff reported symptoms of widespread pain and limitations, mostly in her right shoulder and right arm, as well as right arm weakness, bilateral hand numbness and poor coordination, and neck and low back pain.  Id.

The ALJ correctly observed that at least some of Dr. Phillips's opinion was based on Plaintiff's report of her symptoms.  While Dr. Phillips cited to her medical history and noted that

---

[1] Dr. Phillips stated that Plaintiff had an MRI in December 2006 demonstrating a herniated cervical disk which was treated with a fusion.  Tr. 579.  But, the medical record shows that the surgery occurred on November 10, 2006, not after December 2006.  Tr. 354 (Dec. 15, 2006 office visit chart note noting Nov. 10, 2006 surgery and "90 percent" improvement "at least" of neck, shoulder, and right hand symptoms; further noting normal sensation and grip).

he had been her treating physician for approximately six years, he expressly cited to Plaintiff's own report of symptoms of pain and limitations as a basis for his opinion.

A treating physician's opinion may be rejected if it is based on a non-credible claimant's subjective reports.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did not err in rejecting medical opinions based on subjective complaints).  A medical opinion which is "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted." Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  Although Plaintiff has had surgeries on her foot/ankle, neck, and shoulder, the limitations assessed by Plaintiff appear to be based, to a large extent, on Plaintiff's self-reports of pain, symptoms, and limitations.  Because the ALJ's finding that she is not credible was not error, it was not error for the ALJ to conclude that to the extent Dr. Phillips's opinion is based on Plaintiff's subjective reports, Dr. Phillips's opinion should be given little weight.

Plaintiff argues that the ALJ erred in stating that subsequent nerve conduction studies showed that there was no underlying cause for her subjective reports.  Plaintiff contends that this statement was inaccurate because no physician of record concluded that there was no underlying cause for Plaintiff's complaints.  In support she cites to two records from 2009.  The first, dated April 15, 2009, is an assessment by Dr. Sydney Piercey, M.D., in which he notes that EMG and nerve conduction studies performed on that date showed an active radial neuropathy.  Tr. 410. He continued with his assessment, writing that "suspect her more diffuse symptoms are related to her cervical neck symptoms prior to her neck fusion in 2006." Id.  He also noted that she "continues to have moderate stenosis" and that the "radial neuropathy is most likely compressive

12 - OPINION & ORDER

and peripheral." Id. Finally, he stated that it was "possible, although unlikely, this is [] the first of a polyneuropathy." Id. The second record is an EMG/NCS record from October 16, 2009 which was "consistent with diffuse active dennervation and rennervation of the right upper extremity[;] findings are consistent with brachial plexopathy." Tr. 501.

The problem with Plaintiff's citation to these records is that the ALJ's statement referred to "subsequent EMG and nerve conduction studies," meaning subsequent to Dr. Phillips's February 2011 opinion. The records Plaintiff cites were generated before that opinion. As Defendant notes, EMG/NCS reports from March 24, 2011 were normal. Tr. 597-600. There was no evidence of radiculopathy, peripheral neuropathy, or myopathy. Id.; see also Tr. 506 (May 19, 2010 EMG/NCS testing was normal). Thus, the ALJ did not inaccurately find that EMG and nerve conduction studies performed only one month after Dr. Phillips remarked on her right arm numbness and weakness, were normal and thus failed to provide an objective basis for Plaintiff's subjective complaints. See Tr. 594 (February 3, 2011 chart note by neurologist Dr. Shelly Svoboda remarking that Plaintiff had previously been seen in her office for right brachial plexitis although "[e]valuation showed no clear etiology for this.").

In discussing the medical evidence, the ALJ noted several records pertaining to Plaintiff's neck, right shoulder, and right upper extremity complaints. In May 2007, she complained of right shoulder pain primarily related to overuse. Tr. 17 (citing Tr. 336-47). She had limited range of motion, but her strength remained normal. Id. She received injections without lasting improvement or relief. Id. Although her shoulder x-ray was normal, an MRI had findings consistent with an interstitial tear, as well as an equivocal tiny tear of the labrum. Tr. 17-18 (citing Tr. 240, 360). In 2008, she began to relate her right shoulder pain to recurring neck pain

13 - OPINION & ORDER

and described tingling and numbness in her fingers. Tr. 18. Her range of motion had improved, however, and she denied weakness. A cervical spine MRI showed minimal spondylosis with post-surgical changes consistent with anterior discectomy and fusion at C6-C7 without evidence of hardware failure or complication. Id. (citing Tr. 238-39, 327-35).

Later in September, Plaintiff established care with Dr. Frances Spiller, D.O., reporting that Dr. Phillips had hurt her feelings. Tr. 18; see also Tr. 324-26. The ALJ noted that although Plaintiff told Dr. Spiller that she was unable to work due to her chronic pain and busy schedule, Dr. Spiller concluded that she was not "disabled to the degree that she cannot work" mentally and that she was able to function during the day without significant physical difficulties despite her assertions otherwise. Id. (citing Tr. 324-26). Plaintiff returned to Dr. Phillips after receiving Dr. Spiller's opinion. Id.

Plaintiff's complaints of right shoulder pain continued in November 2008 when she reported an exacerbation to Dr. Phillips caused by playing badminton. Id. (citing 278, 320-23). Dr. Phillips diagnosed a rotator cuff tear. Id. On Dr. Phillips's suggestion, Plaintiff met with orthopedist Dr. Donald Pennington, D.O., who recommended physical therapy. Id. Because her symptoms persisted, Dr. Pennington ordered more diagnostic tests which showed a SLAP tear in the shoulder and an active radial neuropathy. Id.

The ALJ continued to summarize the medical evidence up to the time of Dr. Phillips's February 2011 opinion, noting that the April 2009 surgery performed by Dr. Pennington Plaintiff's right shoulder produced good results with Plaintiff commenting that she was very pleased with the repair. Tr. 18 (citing Tr. 407-83, 490-92, 576-78); see also Tr. 556 (Sept. 15, 2009 chart note by Dr. Pennington indicating that although Plaintiff needed continuing physical

therapy for strengthening, she had no activity restrictions at that time).  The ALJ noted that

Plaintiff saw Dr. Piercey for complaints of wrist and biceps weakness and that he made certain

strength findings and noted some decreased reflexes in the right upper extremity.  Tr. 18.

Although the April 2009 EMG and nerve conduction studies were consistent with right brachial

plexopathy, the ALJ noted that an MRI was normal.  Tr. 18 (citing Tr. 500-10); Tr. 510 (Nov. 14,

2009 "right brachial plexis MRI" showing a normal right brachial plexus).  The ALJ noted that in

March 2010, Dr. Piercey diagnosed right brachial plexitis and noted mild improvement.  Id.

(citing Tr. 500-10)  He encouraged her to increase her exercise.  Id.  Repeat nerve conduction

studies in May 2010 were normal.  Id.

      The ALJ summarized the care provided by Dr. Phillips in 2010, including that her reports

to Dr. Phillips were consistent with her reports to Dr. Pennington and Dr. Piercey, that Dr.

Phillips noted she had a ganglion cyst in her right wrist as well as suspected carpal tunnel

syndrome, that Dr. Phillips remarked that she was experiencing low back and tailbone pain

secondary to degenerate disc disease, and that Dr. Phillips described her fibromyalgia as stable.

Tr. 18 (citing Tr. 526-65).  In November 2010, Dr. Phillips referred Plaintiff back to Dr.

Pennington for a rotator cuff injury.  Id. Dr. Pennington reevaluated Plaintiff for ongoing

numbness and tingling in her hand and his objective findings included decreased strength and

range of motion and positive Neer and Hawkins signs.  Tr. 19 (citing Tr. 576-78, 581-85).  Dr.

Pennington diagnosed impingement and rotator cuff weakness and recommended increased

strengthening.  Id.  In early February 2011, Plaintiff saw Dr. Svoboda for complaints of upper

and lower extremity weakness, tingling, and numbness.  Id. (citing Tr. 593-623).  However, May

2011 EMG and nerve conduction studies were unremarkable.  Id

15 - OPINION & ORDER

Plaintiff is correct that in the paragraph in which the ALJ rejects Dr. Phillips's February 2011 opinion, the ALJ stated, without citation, that Dr. Phillip's opinion was inconsistent with the substantial evidence of record. But, the ALJ had previously spent several pages discussing the medical evidence in some detail and he was not required to repeat it. As recited by the ALJ, the medical evidence suggests that Plaintiff obtained good relief from her neck and shoulder surgeries. Although she continued to express complaints of some neck and shoulder pain, these complaints were not supported by objective testing and no additional surgeries were contemplated. Instead, she was treated with physical therapy, told to increase her exercise, and to work on strengthening her shoulder. As to her numbness and other right upper extremity symptoms, while she was diagnosed with a right brachial plexitis, EMG/nerve conduction studies in 2010 and 2011 failed to show any objective reason for her symptoms. And while she did have some decreased strength, there is nothing in the record, other than Plaintiff's unreliable self-reports, to support Dr. Phillips's conclusion that she is limited to five pounds of lifting and cannot use her right arm at all. The ALJ did not err by concluding that Dr. Phillips's February 2011 opinion was inconsistent with the substantial evidence in the record.

Finally, Plaintiff argues that the February 2012 RFC assessment by Dr. Phillips resolves the ALJ's finding that Dr. Phillips failed to define Plaintiff's limitations in standing or sitting for prolonged periods. The ALJ did not have the benefit of the February 2012 RFC in which Dr. Phillips opined that Plaintiff could stand or walk and sit less than or equal to two hours in an eight-hour work day. Tr. 707-09. But, Plaintiff submitted the document to the Appeals Council which considered it and made it part of the record. Tr. 1-6. Plaintiff correctly asserts that because the Appeals Council considered the evidence and made it part of the record, the district

court must consider it in reviewing the Commissioner's final decision for substantial evidence. Brewes v. Comm'r, 682 F.3d 1157, 1163 (9th Cir. 2012).

Defendant agrees the district court should consider the evidence but argues that because Dr. Phillips failed to relate this opinion back to the period the ALJ actually adjudicated, it is not material. Additionally, even if it did relate back to that period, it does not warrant remand because the ALJ provided other valid reasons for rejecting Dr. Phillips's opinion.

I agree with Defendant. The ALJ specifically rejected Dr. Phillips's opinion's regarding Plaintiff's standing and walking abilities and that she would likely not be capable of even sedentary work because of Dr. Phillips's failure to define her limits as debilitating. But, the ALJ more generally rejected Dr. Phillips's opinion because it was based on subjective testimony and it was inconsistent with the substantial medical evidence in the record. Any limitations in standing, walking, or sitting appear to have no objective basis in the medical record in the relevant time period which is after her alleged onset date of December 1, 2008. Although there is evidence of a right metatarsal foot fracture in 2007, Tr. 346-53, I find no subsequent mention of it in the record. And, there are only subjective complaints of low back pain. Thus, Defendant is correct that the ALJ's other reasons for rejecting Dr. Phillips's opinion are appropriately applied to his February 2012 standing, walking, and sitting restrictions.

The ALJ provided specific and legitimate reasons for rejecting Dr. Phillips's opinion which are supported by substantial evidence in the record.

B. Dr. Smolen/GAF Assessments

Plaintiff's treating psychiatrist was Dr. Gale Smolen, M.D. In May 2009, Dr. Smolen issued a psychiatric assessment of Plaintiff concluding that Plaintiff had bipolar-II disorder and

17 - OPINION & ORDER

PTSD.  Tr. 513.  She issued a GAF score of 48.  Id.  She wrote that she believed Plaintiff had

bipolar-II disorder "which manifests by mood swings, going for little sleep when she has normal

to high energy or not sleep to a fairly good sleep when she is depressed."  Id.  Her "energy level

various according to her mood" and her thoughts race.  Id.  As for the PTSD, Dr. Smolen said

that Plaintiff startles easily.  Id.

Before beginning her treatment with Dr. Smolen, Plaintiff previously had an intake

assessment with Linn County Mental Health in February 2008 where Sergly Barsukov, M.A.,

assessed her GAF score as 45.  Tr. 262-66.  In October 2008, another practitioner at Linn County

Mental Health assessed her with GAF scores of 48 and 45.  Tr. 267-75.  It does not appear that

Plaintiff received ongoing treatment during that time period.

During her treatment with Dr. Smolen, Dr. Smolen assessed Plaintiff with GAF scores of

48 or 45 several times.  Tr. 522 (June 3, 2010 GAF 48); Tr. 516 (June 20, 2010 GAF 48); Tr. 629

(June 23, 2011 GAF 45); Tr. 703 (Sept. 28, 2011 GAF 45).   In the Fourth Edition of the

American Psychiatric Association's Diagnostic & Statistical Manual of Mental Disorders, a GAF

score between 41 and 50 suggests "serious symptoms," with examples of "suicidal ideation,

severe obsessional rituals, frequent shoplifting," or "any serious impairment in social,

occupational, or school functioning," with examples of "no friends, unable to keep a job."  APA,

Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000).

The ALJ summarized the mental health evidence and noted the GAF scores.  Tr. 19-20.

But, in rendering his RFC, he failed to discuss whether he accepted or rejected the opinions of

these mental health practitioners and failed to specify what weight he assigned to them, if any.

Plaintiff argues this was error.  Defendant concedes that the ALJ should have specified the

weight given to these opinions but argues that any omission is harmless.

Defendant argues that first, "comparing the ALJ's [RFC] assessment to GAF scores indicating serious symptoms or impairments, it is plain the ALJ rejected these opinions." Def.'s Brief at 17. Second, Defendant contends that the Ninth Circuit has indicated that an ALJ's failure to address GAF scores is not error. Third, Defendant argues that because the American Psychiatric Association abandoned the GAF scale in its most recent revision to the Diagnostic and Statistical Manual of Mental Disorders (DSM), the scores are not relevant.

I reject Defendant's arguments. First, it is the ALJ's responsibility to assess and weigh the medical evidence. See Vasquez, 572 F.3d at 591 (ALJ responsible for resolving conflicts in medical testimony). Defendant asks the Court to conclude that the ALJ implicitly rejected the mental health practitioners' opinions and assessments given that the RFC included mental-health related restrictions only as to tasks requiring no more than four steps and no more than occasional interaction with the public. However, the Court reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). The ALJ failed to give any reason for ignoring these opinions. It is not this Court's place to do so in the first instance or to speculate based on the RFC alone what reasons the ALJ might have given in support of an implied rejection.

Second, the Ninth Circuit has stated in unpublished, non-binding decisions that the ALJ's failure to refer to GAF scores is not error because a GAF score does not have a direct correlation to the severity requirements in the Commissioner's mental disorder listings and thus, it does not establish disability. Doney v. Astrue, 485 F. App'x 163 (9th Cir. 2012) (citing McFarland v.

Astrue, 288 F. App'x 357, 359 (9th Cir. 2008)).

However, the Ninth Circuit has also indicated that GAF scores are relevant to the disability assessment because they are "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Garrison v. Colvin, No. 12-15103, 2014 WL 3397218, at *4 n. 4 (9th Cir. July 14, 2014) (further noting that "GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability" but, "they may be a useful measurement"); see also Graham v. Astrue, 385 F. App'x 704, 706 (9th Cir. 2010) (GAF scores are not dispositive but they are "nonetheless relevant") (citing Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)); De Los Reyes v. Comm'r, No. 1:12–cv–02048–AC, 2014 WL 61320, at *13 (D. Or. Jan. 7, 2014) ("GAF scores are relevant to assess a claimant's ability to work but they are not dispositive").

As noted above, Defendant concedes that the ALJ should have specified the weight given to the mental health practitioners' opinions, including their GAF scores. It is inconsistent to make this concession and then argue that the ALJ's error is harmless because the ALJ was not required to discuss the opinions. While the GAF scores are not controlling and do not directly correlate to a finding of disability, they are relevant. It was error for the ALJ to omit discussion of the weight to be assigned to the opinions of the mental health practitioners.

Third, I agree with Plaintiff that while the Fifth Edition of the DSM dropped the GAF scale for "several reasons," including "its lack of conceptual clarity" and "questionable psychometrics in routine practice[,]" DSM-V 16, the scores in this case were issued in accordance with the then-applicable DSM-IV-R and, as stated above, they are relevant to the disability analysis. The fact that the GAF scores here are consistent and rendered over a three-

20 - OPINION & ORDER

year period by three different practitioners suggests that they may not be inconsequential to the

ultimate non-disability determination and thus, the failure to discuss them cannot be considered

harmless. Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006). The ALJ erred in failing to

assess and weigh the mental health practitioners' opinions and their GAF scores. The error was

not harmless.

III.  Step Five - Vocational Expert Testimony

The ALJ's RFC includes the limitation of occasional overhead reaching with the right

upper extremity. Tr. 17. The vocational expert (VE) testified at the hearing that a person with

that limitation could perform the jobs of bottle packer, marker II, and garment sorter. Tr. 84, 85.

In later questioning, the VE explained that all three of the jobs require frequent or continuous use

of the right hand. Tr. 88. Because they are "production-pace jobs, the right hand – dominant

hand is obviously very important in keeping pace." Id.

The jobs of bottle packer and marker II require constant reaching and the garment sorter

job requires frequent reaching. DOT, 1991 WL 687929 (bottle packer); 1991 WL 687992

(marker II); 1991 WL 672131 (garment sorter); see also Pl.'s Op. Brief, Ex. A (excerpts from the

Department of Labor's Selected Characteristics of Occupations Defined in the Revised

Dictionary of Occupational Titles (1993) ("Selected Characteristics")).

Plaintiff argues that the VE's testimony that a person restricted to occasional overhead

reaching can perform the identified jobs is inconsistent with the DOT and is inconsistent with the

VE's testimony that the jobs require constant use of the dominant hand. Plaintiff argues that the

ALJ's reliance on this testimony was error.

The occupational evidence provided by a VE should be consistent with the occupational

21 - OPINION & ORDER

information supplied by the DOT.  Soc. Sec. Ruling (SSR) 00–4p, available at 2000 WL 1898704.  An ALJ may not rely on testimony by the VE without inquiring whether the testimony conflicts with the DOT, and if there is a conflict, the ALJ must elicit a reasonable explanation for any conflict.  Id.; see also Massachi, 486 F.3d at 1152–53.  The ALJ may rely on VE testimony over the DOT if the ALJ determines that the explanation provided by the VE is reasonable and provides a basis for doing so. SSR 00–4p; Massachi, 486 F.3d at 1153.

Defendant suggests that Plaintiff has waived the right to raise this argument because she did not raise it before the ALJ.  Defendant cites to Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) in support.  There, the plaintiff argued that contrary to the VE's testimony, the jobs identified by the VE did not exist in sufficient numbers in the local economy.  In support, the plaintiff relied on new statistical evidence, not provided to the ALJ at the hearing or to the Appeals Council.  The Ninth Circuit held that the plaintiff had not preserved this argument.  Id. It said that "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." Id.

Meanel is distinguishable and even if it were not, I exercise my discretion to reach the merits of Plaintiff's argument.  Meanel concerned an argument based on entirely new evidence brought to the court's attention for the first time in the district court appeal.  Here, the VE is the occupational expert and is charged with knowledge of the DOT and the specific job characteristics.  The VE had already testified that he would identify any differences "in the way you . . . have identified a job that may differ in the way it's actually described in the DOT." Tr. 83.  Given that the VE acknowledged that his testimony would be consistent with the DOT and he identified the three occupations as suitable for someone with Plaintiff's overhead reaching

22 - OPINION & ORDER

limitation, there was no obvious conflict in testimony for Plaintiff to raise with the ALJ or the

VE at that point.  Furthermore, the VE's testimony about the constant use of the hands was not so

inconsistent with a restriction on overhead reaching as to make a conflict apparent.  Under these

circumstances, I find that Meanel does not apply.

Even if Plaintiff waived the issue by not raising it, I exercise my discretion to address it.

The issue presented is one of law and the pertinent record has been fully developed.  Greger v.

Barnhart, 464 F.3d 968, 973 (9th Cir. 2006).  The Acting Commissioner has had the opportunity

to respond to the arguments Plaintiff now raises and thus, she "will suffer no prejudice as a result

of the failure to raise the issue [before the ALJ]."  Raich v. Gonzales, 500 F.3d 850, 868 (9th Cir.

2007).  And, I find that review of the issue is "'necessary to avoid a manifest injustice.'"  Greger,

464 F.3d at 973 (quoting Meanel, 172 F.3d at 1115).

As to the merits, Defendant argues that there is no conflict between the DOT and the VE's

testimony because the DOT does not state how often, if ever, overhead reaching is required, or

whether bilateral reaching is required at all.  But, "reaching" is defined as "[e]xtending hand(s)

and arm(s) in any direction."  Selected Characteristics, App. C-3.  While Defendant states that

Plaintiff has made no showing that more than occasional overhead reaching is required to

perform the identified jobs, it is the Commissioner's burden at step five, not the claimant's, to

establish that there are jobs that the claimant can perform.  Given that the Selected

Characteristics makes no distinction among the various types of reaching and in fact defines the

term to encompass using the hands or arms to extend in any direction, overhead reaching is

required in the identified jobs and it is up to the Commissioner to explain that the amount of

overhead reaching required is consistent with the Plaintiff's limitations.  See Ricker v. Colvin,

No. 12-00664-CL, 2013 WL 3944424, at *7 (D. Or. July 30, 2013) (stating that "[m]any courts in this circuit have found that there is a potential inconsistency between VE testimony that a job could be performed by someone who can only occasionally reach overhead and DOT job descriptions requiring frequent reaching") (citing cases).

Here, the VE failed to acknowledge the potential conflict. As a result, the ALJ erred at step five in failing to resolve the VE's deviation from the DOT and then relying on the VE's testimony in support of his finding that Plaintiff was not disabled. Because I agree with Plaintiff that the VE's testimony conflicted with the DOT, I need not address Plaintiff's argument that the VE's testimony was internally inconsistent.

IV. Remand for Additional Proceedings

Plaintiff seeks a remand for a determination of benefits. However, remand for additional proceedings is appropriate in this case. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).

Here, while the ALJ failed to discuss the mental health practitioners' opinions and the GAF scores, the discussion above makes clear that those scores are not controlling. And, Plaintiff fails to identify any functional limitations rendered by those practitioners that conclusively establish disability. Furthermore, because the VE's testimony conflicted with the

DOT, the record fails to include any evidence of jobs that Plaintiff can perform.  This does not, however, mandate a finding of disability.  Instead, the ALJ should be given the opportunity on remand to obtain reliable vocational evidence.

CONCLUSION

The Commissioner's decision is affirmed in part and reversed and remanded for additional proceedings related to the issues of assessing the mental health practitioners' opinions and GAF scores and obtaining VE testimony that is not in conflict with the DOT.

IT IS SO ORDERED.

Dated this ____18____ day of ____Aug_____, 2014


Marco A. Hernandez
United States District Judge